UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LONNIE WILLIAMS, CDCR #T-54378,<br><br>Plaintiff,<br><br>vs.<br><br>DANIEL PARAMO; R. OLSON; E. MARRERO; M. ASHLEY; CALIFORNIA DEPARTMENT OF JUSTICE; E. MARQUEZ; CALIFORNIA POLICE DEPARTMENT HIGHLAND,<br><br>Defendants. | Case No.: 3:12-cv-00113-BTM-RBB<br><br>**ORDER DISMISSING PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILING TO STATE A CLAIM, AS FRIVOLOUS**<br><br>[ECF No. 126] |

**I.    Procedural History[1]**

Lonnie Williams ("Plaintiff"), currently incarcerated at the California State Prison - Sacramento ("CSP-SAC") located in Represa, California, is proceeding in pro se

---

[1] This matter has a very lengthy procedural history. The Court will only address the procedural history relevant to the current procedural posture of the case.

and in forma pauperis ("IFP") in this civil rights action filed pursuant to 42 U.S.C. § 1983. Currently pending before the Court is Plaintiff's First Amended Complaint ("FAC"). (ECF No. 126.)

On November 27, 2017, the Court GRANTED Defendants' Motion for Judgment on the Pleadings. (ECF No. 121.) In this Order, the Court DISMISSED Plaintiff's Eighth Amendment, Fourteenth Amendment, and conspiracy claims with leave to amend. (*Id.* at 15.) In addition, the Court DISMISSED Plaintiff's state law libel and slander claims without leave to amend. (*Id.*) While Plaintiff was given leave to amend certain claims, she was specifically admonished by this Court that she may not "add any additional Defendants nor may she allege facts or claims that she has already presented in the twenty two (22) civil rights actions that she has filed since April of 2012." (*Id.* at 5-6.) However, Plaintiff has disregarded the Court's admonition by adding additional claims and Defendants in her FAC. In Plaintiff's FAC, she has added M. Ashley, California Department of Justice, E. Marquez and the California Police Department, Highland as named Defendants. (*See* FAC at 1-3.)

## II. Factual Background

On December 1, 2011, Plaintiff was housed at the Richard J. Donovan Correctional Facility ("RJD") and appeared before an institutional classification committee ("ICC"). (*See* FAC at 4.) Plaintiff alleges Defendants Olson, Ashley, Marrero, and Paramo "conspired with each other" to remove the "R" suffix "from the Plaintiff's central files." (*Id.*) Plaintiff claims that these Defendants found that the "placement of the 'R' suffix was unlawful and not in compliance with CDCR policies and procedural rules." (*Id.*)

However, two weeks later on December 14, 2011, Plaintiff alleges Defendants Olson and Ashley told the ICC that Plaintiff had been arrested for "assault to commit rape" and convicted of "sexual battery." (*Id.*) As a result, Plaintiff claims Defendants Olson, Marrero, and Paramo "conspired with each other" and the "R" suffix was "reapplied" to Plaintiff's file at the ICC hearing. (*Id.*) However, Plaintiff alleges that the Defendants "know that Plaintiff was never convicted of rape or sexual battery as a

2

juvenile" or as an adult. (*Id.*)

Plaintiff attempted to file a grievance regarding the application of the "R" suffix to her file but was allegedly "hindered by the RJDCF- Sacramento Appeals Coordinators." (*Id.* at 5.) Plaintiff also filed a "complaint" with the "California Department of Justice (DOJ)" in which she "refut[ed] the unlawful, incorrect conviction(s)." (*Id.*)

Plaintiff claims the "DOJ" told her in "2009 (while Plaintiff was housed at North Kern State Prison) and 2010 in CSP-Sacramento" that they "could not correct the incorrect convictions unless the Court order[ed] the (DOJ) to correct the Plaintiff's incorrect criminal history record's and CLETS." (*Id.*)

On October 21, 2011 and October 24, 2011, Plaintiff claims she submitted grievances for "emergency medical treatment due to the Plaintiff being poisoned daily, while in Administrative Segregation at RJDCF, through her foods." (*Id.*) On November 15, 2011, Plaintiff filed a grievance against various correctional officers at RJD. (*See id.*) Plaintiff does not set forth the basis for this grievance, however, she claims Defendants Marrero and Paramo repeatedly denied her appeals on December 12, 2011, December 14, 2011, and January 23 - 25, 2012. (*See id.* at 6.) Plaintiff also claims that they never returned her grievances to her "making the appeals system unavailable to the Plaintiff." (*Id.*)

Plaintiff claims Defendants Paramo, Marrero, Olson and Marquez "telephoned the CSP-Sacramento officials in 2012" after Plaintiff was transferred to CSP-Sacramento to "discuss the 'R' suffix and the poisoning of the Plaintiff's food." (*Id.*) Plaintiff claims she was poisoned daily with "nitrite poisoning," "rat poisons, insecticides, fertilizers containing arsenic," "nitrous acid," and "pesticides" from 2010 to 2017. (*Id.*) Plaintiff alleges that this poisoning has caused her to "suffer heart attacks, abnormal EKGs," and "damage to Plaintiff's heart." (*Id.*)

Plaintiff alleges Defendants Paramo, Marrero, and Olson relied on documentation provided by the Defendant "California Police Department, Highland, Sheriff's Department, Records Division, CSP-Sacramento, Debbie Fontaine (WHD-Desk)" when

they determined that Plaintiff should have an "R" suffix on her classification. (*Id.* at 6-7.) Plaintiff alleges she has "never pleaded guilty to any sexual crimes" and she has "never been convicted of any sexual battery or rape" against anyone "living or dead." (*Id.* at 7.)

On January 5, 2012, Plaintiff alleges she "personally informed" Defendants Paramo, Marrero, Olson, and the ICC that Defendant Marquez "told several inmates (in my presence) that this Plaintiff was/am [an] alleged convicted sex-offender." (*Id.*) As a result, Plaintiff claims that she is "in imminent danger and receiving threats of harm from "two-five gang members with taunts, harassments, and imminent safety concerns." (*Id.* at 7-8.) Plaintiff claims the "two-five gang members have directly threatened 'to get the plaintiff' for allegedly being a sex-offender based on what [Defendant Marquez] stated to them about Plaintiff." (*Id.* at 8.) Plaintiff alleges that Defendant Paramo told Plaintiff in response to these concerns, "So what! That is not my problem! That is your problem!" (*Id.*) On that same day, January 5, 2012, Plaintiff "attempted to file a grievance as to all the allegations raised in this civil action" but correctional counselors at both RJD and CSP-Sacramento "refused to file or make the appeals system available to the Plaintiff." (*Id.*)

## III. Sua sponte screening pursuant to 28 U.S.C. § 1915(e) & § 1915A

### A. Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, her FAC requires a screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Williams v. King*, __ F.3d __, 2017 WL 5180205, at *2 (9th Cir. Nov. 9, 2017) (discussing 28 U.S.C. § 1915(e)(2)) (citing *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford*

4

*Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)). A complaint is "frivolous" if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

B. <u>42 U.S.C. § 1983</u>

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2)

5

that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

    C.    <u>Eighth Amendment Failure to Protect claims</u>

Plaintiff alleges that Defendant Marquez "told several inmates (in my presence) that this Plaintiff was/am [an] alleged convicted sex offender." (FAC at 7.) Plaintiff claims that these alleged statements by Marquez caused her to receive "threats of harm from 'two-five' gang members." (*Id.*) Plaintiff further claims that "two-five" gang members have "threatened to 'get the plaintiff' for allegedly being a sex-offender" based on the alleged statements by Marquez. (*Id.* at 8.)

These allegations are virtually identical to the allegations in Plaintiff's original Complaint. While Plaintiff does not provide a timeline as to when these actions occurred in her FAC, she did allege that she told Defendants Paramo, Olson and Marrero on January 5, 2012 that Marquez had made these statements. (*See* orig. Compl., ECF No. 1, at 4.) On April 11, 2012, Plaintiff notified the Court in a separate matter that she had been transferred back to CSP.[2]

While these are serious claims, the Court found in the November 27, 2017 Order that Plaintiff's original Complaint was devoid of any allegations that she had suffered a physical injury while housed at RJD from the fall of 2011 to April 11, 2012. (*See* Nov. 27, 2012 Order, ECF No. 121, at 5.)

Prison officials have a duty under the Eighth Amendment to avoid excessive risks to inmate safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To state a claim under the Eighth Amendment, Plaintiff must allege Defendants were "deliberate[ly] indifferen[t]" to "conditions posing a substantial risk of serious harm." *Id.* Deliberate indifference is more than mere negligence, but less than purpose or knowledge. *See id.* at 836. A necessary element to find "deliberate indifference" is a showing of actual harm.

---

[2] *See Williams v. Paramo, et al.*, S.D. Cal. Civil Case No. 3:12-cv-00025-AJB-WMc, ECF No. 8, Notice of Change of Address.


6

3:12-cv-00113-BTM-RBB

*Hudson v. McMillian*, 503 U.S. 1, 9 (1992).)

While Plaintiff alleged facts in pleadings outside of her original Complaint, she offered no factual allegations that any physical harm came to her while housed at RJD or that she was physically harmed at CSP *because* of the actions allegedly taken by the RJD Defendants in her original Complaint. The Court instructed Plaintiff that if she were to amend her pleading, "she must provide plausible factual allegations that demonstrate a direct causal connection between the RJD Defendants and the physical harm she alleges that she has suffered" while housed at CSP. (Nov. 27, 2017 Order, ECF No. 121, at 5.)

In her FAC, Plaintiff now alleges that she was "poisoned daily" while at RJD through "her foods." (FAC at 5.) As the Court found in the previous Order, Plaintiff has made claims that she is being poisoned by prison officials at CSP in at least eleven actions filed in the Eastern District between 2012 and 2017.[3] In one of these matters, the Ninth Circuit found, in reviewing an appeal filed by Plaintiff who is subject to a pre-filing review order, that the appeal Plaintiff filed in *Williams v. Roberts, et al.*, E.D. Cal. Civil Case No. 2:14-cv-00728-KJM-DAD, which contained claims of poisoning, was "so insubstantial as to not warrant further review."[4]

In fact, Plaintiff has filed these identical claims in this Court as well. In *Williams v. Ramos, et al.* S.D. Cal. Civil Case No. 3:11-cv-02348-JLS-PCL, Plaintiff alleged RJD officials, including Defendant Marquez, were placing "biological agents, bacteria, toxins and poisons into my food." (*Id.*, FAC, ECF No. 21, at 5.) Plaintiff's IFP status was

---

[3] *See Williams v. Wedell, et al.*, E.D. Cal. Civil Case No. 2:12-cv-01438-GEB-GGH; *Williams v. Nappi, et al.*, E.D. Cal. Civil Case No. 2:12-cv-01604-GEB-CMK; *Williams v. CDCR, et al.*, E.D. Cal. Civil Case No. 2:12-cv-01616-JAM-EFB; *Williams v. Brennan, et al.*, E.D. Cal. Civil Case No. 2:12-cv-02155-KJM-AC; *Williams v. D. Bauer, et al.* E.D. Cal. Civil Case No. 2:12-cv-02158-MCE-EFB; *Williams v. Norton, et al.*, E.D. Cal. Civil Case No. 2:12-cv-02889-CKD, *Williams v. Murillo, et al.*, E.D. Cal. Civil Case No. 2:12-cv-03066-MCS-KJN; *Williams v. Roberts, et al.,* E.D. Cal. Civil Case No. 2:14-cv-00728-KJM-DAD; *Williams v. Harris*, E.D. Cal. Civil Case No. 2:14-cv-01191-WBS-AC; *Williams v. Lopez, et al.*, E.D. Cal. Civil Case No. 2:16-cv-00131-KJM-KJN; *Williams v. Moghaddam, et al.*, E.D. Cal. Civil Case no. 2:17-cv-01481-JAM-EFB.

[4] *See In re: Lonnie Clark Williams, Jr.*, No. 14-80007 (9th Cir. Apr. 14, 2015)

revoked in this matter and Plaintiff filed an appeal to the Ninth Circuit. (*Id.*, ECF No. 33.) The Ninth Circuit found that Plaintiff had at least three or more actions dismissed as frivolous or for failing to state a claim. (*Id.*, ECF No. 40.) Plaintiff was directed to pay the filing fee on appeal or show cause why her IFP status should not be revoked on appeal. (*Id.*) Plaintiff did not do either and the appeal was dismissed. (*Id.*, ECF No. 41.)

Plaintiff then filed a second action in this Court alleging Defendant Marquez was poisoning her food, as well as "inject[ing]" Plaintiff with "air and poisons." *See Williams v. Paramo, et al.*, S.D.Cal. Civil Case No. 3:12-cv-00025-AJB-WMc, ECF No. 1, at 6. In this matter, Plaintiff's request to proceed IFP was denied as barred pursuant to 28 U.S.C. § 1915(g) and the case was closed. (*Id.*, ECF Nos. 6, 7.) Plaintiff did not appeal this decision.

After the matter currently before this Court was filed, Plaintiff filed *Williams v. Russell, et al.*, S.D.Cal Civil Case No. 3:12-cv-00218-JAH-MDD ("*Russell I*"). In this matter, Plaintiff alleged Defendant Marquez was "constantly spitting into my foods and placing a poison (which contains arsenic) into my foods." (*Id.*, ECF No. 1, at 7.) Plaintiff voluntarily dismissed this action. (*Id.*, ECF No. 3.) However, Plaintiff later filed the identical action in *Williams v. Russell, et al.*, S.D.Cal. Civil Case No. 3:12-cv-00390-CAB-PCL ("*Russell* II") and this action contains the identical factual allegations against Defendant Marquez as the previous matter that Plaintiff voluntarily dismissed in *Russell I*. In *Russell II*, Plaintiff's request to proceed IFP was denied as barred by 28 U.S.C. § 1915(g) and the case was dismissed. (*Id.*, ECF No. 5.) Plaintiff did not appeal this decision.

In *Williams v. Sedighi, et al.*, S.D. Cal. Civil Case No. 3:12-cv-00573-LAB-BGS, Plaintiff sought to hold RJD medical officials liable for failing to treat her based on the allegations of the poisoning placed in her food. (*Id.*, ECF No. 1, at 5.) While Defendant Marquez was not a named Defendant in this action, Plaintiff did allege Marquez "subjected" her to "deliberate, intentional poisonings (through my foods)." (*Id.*)

An IFP complaint is considered frivolous under 28 U.S.C. § 1915(e)(2)(B)(ii)

[formerly § 1915(d)] if it "merely repeats pending or previously litigated claims." *Id.* (construing former 28 U.S.C. § 1915(d)) (citations and internal quotations omitted); *see also Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688-89 (9th Cir. 2007) ("[I]n assessing whether the second action is duplicative of the first, [the court] examine[s] whether the causes of action and relief sought, as well as the parties or privies to the action, are the same."), *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880, 904 (2008). Here, it is clear that Plaintiff has attempted, on many occasions six years ago, to claim that she was poisoned on a daily basis by Defendant Marquez, while housed at RJD in 2011 and 2012. These claims are duplicative and therefore, the Court finds they must be dismissed as frivolous.

In addition, as outlined by the Court, Plaintiff has filed these exact claims regarding the poisoning of her food by prison officials in at least fifteen separate civil rights actions involving multiple prisons and defendants over a period of at least eight (8) years. The Court finds these claims are patently frivolous. A pleading is "factual[ly] frivolous[]" if "the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 25-26 (1992).

"[A] complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact. . . . [The] term 'frivolous,' when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). When determining whether a complaint is frivolous, the court need not accept the allegations as true, but must "pierce the veil of the complaint's factual allegations," *Id.* at 327, to determine whether they are "'fanciful,' 'fantastic,' [or] 'delusional,'" *Denton*, 504 U.S. at 33 (quoting *Neitzke*, 490 U.S. at 328). Here, the Court finds that Plaintiff's claims regarding food poisoning to "rise to the level of the irrational or the wholly incredible," *Denton,* 504 U.S. at 33, and as such, these claims requires dismissal as frivolous.

9

Plaintiff also attempts to allege that she has suffered harm based on the comments by Defendant Marquez because "two-five" gang members have "directly threatened 'to get the Plaintiff' for allegedly being a sex-offender based on what (c/o) I. Marquez stated to them about the Plaintiff" in early 2012. (FAC at 8.) However, three years prior to this action being filed, Plaintiff filed *Williams v. Rodriguez, et al.*, E.D. Cal. Civil Case No. 1:09-cv-01882-LJO-GSA. In this matter, Plaintiff claimed that she was "attacked by three (3) inmates who identify themselves as being members of disruptive groups 'two-fives' and 'Independent Rida's'" because she "is a transsexual and would not participate in the sexual advances of inmates." (*Id.*, ECF No. 5, at 14.) These allegations of harassment by the "two-five" gang members began at a different prison and nearly three (3) years before Plaintiff filed the action before this Court. This would directly contradict the allegation in this action that the purported harassment by "two-five" gang members began when Marquez allegedly called Plaintiff a sex offender in front of other inmates at RJD in 2012.

Moreover, as the Court stated in the previous Order, Plaintiff still has not alleged that she suffered any physical harm while housed at RJD based on the statements attributed to Marquez despite the fact that she initially filed this action six (6) years ago. Nor has she alleged any facts to show that she has suffered harm at her current place of confinement due to the alleged actions of any of the named RJD Defendants. For all the above stated reasons, the Court finds that Plaintiff's Eighth Amendment failure to protect claims must be DISMISSED for failing to state a claim upon which relief may be granted and as frivolous.

D. <u>Fourteenth Amendment claims</u>

Plaintiff alleges that the "R" suffix placed on her classification was "unlawful and not in compliance with CDCR policies and procedural rules." (FAC at 4.) Plaintiff alleges that juvenile court convictions which were the basis of the decision to apply the "R" suffix were "unlawful" and "incorrect." (*Id.* at 5.)

"The requirements of procedural due process apply only to the deprivation of

interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). State statutes and prison regulations may grant prisoners liberty interests sufficient to invoke due process protections. *Meachum v. Fano*, 427 U.S. 215, 223-27 (1976). However, the Supreme Court has significantly limited the instances in which due process can be invoked. Pursuant to *Sandin v. Conner*, 515 U.S. 472, 483 (1995), a prisoner can show a liberty interest under the Due Process Clause of the Fourteenth Amendment only if he alleges a change in confinement that imposes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Id*. at 484 (citations omitted); *Neal v. Shimoda*, 131 F.3d 818, 827-28 (9th Cir. 1997).

The Sandin test requires a case-by-case examination of both the conditions of the prisoner's confinement and the duration of the deprivation at issue. *Sandin*, 515 U.S. at 486. In short, Plaintiff must allege facts to show "a dramatic departure from the basic conditions" of his confinement before he can state a procedural due process claim. *Id*. at 485; *see also Keenan v. Hall*, 83 F.3d 1083, 1088-89 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998).

Plaintiff does not have a constitutional right to receive a particular security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 244-50 (1983); *Moody v. Daggett*, 429 U.S. 78, 87 n.9 (1976). However, the Ninth Circuit has applied *Sandin's* procedural due process analysis to a claim similar to Plaintiff's. In *Neal*, the Court considered a due process challenge to Hawai'i's Sex Offender Treatment Program ("SOTP"), which labeled all persons in state custody convicted of specified sex crimes as "sex offenders" and compelled their participation in a psychoeducational treatment program as a prerequisite to parole eligibility. *Neal*, 131 F.3d at 821-22. Applying *Sandin*, the district court concluded that the "labeling of [Neal] as a sex offender and any resultant impact on [his] custody level or eligibility for parole . . . [did] not impose 'atypical and significant' hardship" upon him. *Neal*, 131 F.3d at 828. The Ninth Circuit disagreed, however, finding that the "stigmatizing consequences of the attachment of the 'sex offender' label

*coupled with* the subjection of the targeted inmate to a mandatory treatment program whose successful completion is a precondition for parole eligibility create the kind of deprivations of liberty that require procedural protections." *Id*. at 830 (emphasis added).

Here, while Plaintiff alleges that she has been given the "R" suffix, that classification alone does not "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, *Neal*, 131 F.3d at 830, *Cooper v. Garcia*, 55 F.Supp.2d 1090, 1101 (S.D. Cal. 1999) (A sex offender classification "must also be 'coupled with' some *mandatory, coercive treatment* which affects a liberty interest, such as a parole release in *Neal*, or a physical transfer to a mental hospital for involuntary confinement.") (emphasis in original.) Plaintiff offers no factual allegations that the "R" suffix has impacted her conviction, parole date, or the duration of her sentence. In addition, she has not alleged that she was compelled to enroll in a mandatory treatment program.

Therefore, the Court finds that Plaintiff's Fourteenth Amendment due process claims must be DISMISSED for failing to state a claim upon which relief may be granted.

E. Conspiracy claims

Plaintiff alleges that Defendants "conspired with each other" when they "re-applied the 'R' suffix" to Plaintiff's classification. (FAC at 4.) Plaintiff does not indicate whether she is bringing a claim of conspiracy pursuant to 42 U.S.C. § 1983 or 42 U.S.C. § 1985.

Under § 1985, a conspiracy to interfere with civil rights falls can fall under one of the following three possibilities: (1) preventing an officer from performing their duties; (2) obstructing justice by intimidating a party, witness, or juror; or (3) depriving persons of rights or privileges. *See* 42 U.S.C. § 1985. Here, Plaintiff's claims would fall under § 1985(3) and to properly state a claim pursuant to §1985(3) "a complaint must allege (1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the

conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States." *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980). "[T]he language requiring intent to deprive equal protection . . . means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971); *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992). Here, Plaintiff's Complaint contains no facts to plausibly suggest that she was given an "R suffix" based on any "racial, or perhaps otherwise class-based, invidiously discriminatory animus." *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1056 (9th Cir. 2002).

To state a claim for conspiracy pursuant to § 1983, Plaintiff must allege specific facts showing two or more persons intended to accomplish an unlawful objective of causing him harm and took some concerted action in furtherance of that goal. *Gilbrook v. City of Westminster*, 177 F.3d 839, 856–57 (9th Cir. 1999). In other words, Plaintiff "must show 'an agreement or "meeting of the minds" to violate constitutional rights.'" *Hart v. Parks*, 450 F.3d 1059, 1069 (9th Cir. 2006) (citing *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002)). Conclusory allegations of wide-spread conspiracy, however, are insufficient to state a valid § 1983 claim. *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989) (per curiam)

"Conspiracy itself is not a constitutional tort under § 1983." *Lacey v. Maricopa County,* 693 F.3d 896, 935 (9th Cir. 2012). In order to bring a conspiracy claim, "there must always be an underlying constitutional violation." (*Id.*) Plaintiff offers no specific factual allegations regarding this alleged conspiracy among the Defendants and rather simply sets forth conclusory statements. Moreover, the Court has found that Plaintiff has not alleged facts sufficient to state an Eighth or Fourteenth Amendment claim and thus, Plaintiff cannot adequately state a conspiracy claim based on claims that her constitutional rights were violated.

///

13

## IV. Conclusion and Orders

Good cause appearing, the Court:

1. **DISMISSES** Plaintiff's First Amended Complaint in its entirety for failing to state a claim upon which relief may be granted and as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b). Because the Court finds further amendment futile, leave to amend is **DENIED**. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 339 (9th Cir. 1996) (denial of a leave to amend is not an abuse of discretion where further amendment would be futile).

2. The Court further CERTIFIES that an IFP appeal from this Order of dismissal would not be taken "in good faith" pursuant to 28 U.S.C. § 1915(a)(3). See *Coppedge v. United States*, 369 U.S. 438, 445 (1962); *Gardner v. Pogue*, 558 F.2d 548, 550 (9th Cir. 1977) (indigent appellant is permitted to proceed IFP on appeal only if appeal would not be frivolous).

The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED**.

Dated: February 7, 2018

_____
Hon. Barry Ted Moskowitz, Chief Judge
United States District Court